IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| HERMAN VAN UDEN, | CV 18-00069-H-BMM-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| ASSISTANT WARDEN JIM SOLOMENSEN, DR. REES and INFIRMARY WORKER JANET, | |
| Defendants. | |

Pending is Defendant Garcia and Salmonsen's Motion for Summary Judgment on Plaintiff Herman Van Uden's denial of medical care claims. (Doc. 24.) Defendant Garcia contends that Mr. Van Uden failed to exhaust his administrative remedies with regard to his claims against her. Defendant Salmonsen argues the undisputed facts show that he does not supervise healthcare professionals in the infirmary or have authority over medical decisions. (Doc. 25.)

Having considered the parties' arguments and submission, Defendants have established there is no genuine dispute as to any material fact and Defendants' motions for summary judgment should be granted. Defendants Garcia and Salmonsen should be dismissed.

1

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (*citing Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).  Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. "A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000)

3

(en banc).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party."  *Walls v. Cent. Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586 (citations omitted).

By notice provided on January 11, 2019 (Doc. 27), Mr. Van Uden was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998)(en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## II.  FACTS[1]

Mr. Van Uden is an inmate of the Montana Department of Corrections (DOC) currently housed at the Montana State Prison (MSP).  Excluding hospital stays, Mr. Van Uden has been housed at MSP since February 7, 2017. (Defendants' Statement of Undisputed Facts, Doc. 26 (hereinafter "SUF") at ¶ 1.)

The Montana State Prison (MSP) Grievance Program is available to address all issues that adversely affect an inmate "including, but not limited to, health care, staff conduct, written policy or procedures, and other standard grievance matters."  (SUF at ¶ 2.)  The grievance program excludes only two categories of complaints:  (1) those falling under the jurisdiction of "outside entities not under the jurisdiction of the Department of Corrections" and (2) "[c]lassification, disciplinary, and any other decision which is subject to a separate appeal procedure or administrative review process."  (SUF at ¶ 3.)

For non-emergency health services grievances, the Grievance Program consists instead of the following four steps:  (1) an informal resolution form directed to the unit manager (or designee), (2) a formal grievance directed to the

---

[1]Local Rule 56(d) requires a party opposing a motion for summary judgment to file a statement of disputed facts addressing the moving parties' statement of undisputed facts.  Mr. Van Uden filed a document entitled response to statement of undisputed facts (Doc. 41) but this document does not technically comply with the Court's Local Rules.  Nevertheless, the Court has considered Mr. Van Uden's assertions therein to the extent they are supported by the record.

Facility Health Administrator, (3) an appeal to the Department Medical Director, and (4) an appeal to the DOC Director or designee.  (SUF at ¶ 7.)

At MSP, formal health services grievances are typically addressed by the MSP Director of Nursing; appeals of formal health services grievances are addressed by the Medical Services Bureau Chief; and the Clinical Services Division Administrator, Connie Winner, is typically designated to address Director-level health services appeals.  The MSP Warden does not receive or address health services grievances or appeals.  (SUF at ¶ 8.)  A grievance is handled as a health services grievance if it involves health services judgment. (SUF at ¶ 9.)

At each level, the Inmate Grievance Program provides that "[i]f an inmate's action requested is granted, he will not be allowed to appeal the decision, and it is understood he has exhausted all administrative remedies."  (SUF at ¶ 10.) If an inmate's requested action is not granted, then the DOC Director's response is the final step that exhausts all administrative remedies available to the inmate. (SUF at ¶ 11.)

Mr. Van Uden was educated about the grievance program and its requirements as part of MSP's PREA orientation which Mr. Van Uden attended on March 1, 2017.  (SUF at ¶ 13.)  Mr. Van Uden has demonstrated his ability to use

the grievance program.  Between February 7, 2017, and May 22, 2018, Mr. Van

Uden has filed more than ten formal grievances and at least 25 informal

resolutions.  Of those, he has appealed three to the Director of the Department of

Corrections, the final step in the grievance procedure.  Mr. Van Uden obtained at

least partial relief in at least 15 of those grievances or informal resolution requests.

(SUF at ¶ 19.)

Mr. Van Uden's grievance file contains only one grievance plausibly

embracing his claim against Nurse Garcia.  (SUF at ¶ 20.)  In an informal

resolution form dated December 24, 2017, Mr. Van Uden complained:

> I went to the infirmary on 12-19-17 A nurse started yelling at me for
> nothing I sed [sic] to her whatever that is all I sed [sic] to her. Then
> she came back out from where they stand there doing nething [sic]
> but tocking [sic] she told me to go back to my unit I did. Now I am in
> the hole over her lieing [sic]. I did not do what she sed [sic] I did.
> Why can they do this to people. My celly was right there and he will
> tell you just what happen at the infirmary. this is not right!

He requested as relief:  "I want out of the hole and I want my x-mess pakig [sic]

that I payd [sic] for or put the money back on my books."  (SUF at ¶ 21.)

Mr. Van Uden's informal grievance form was denied by his unit manager

because the grievance was a matter more appropriately handled as a disciplinary

appeal.  (SUF at ¶ 22.)  Mr. Van Uden's grievance file does not contain any formal

grievances advancing this grievance further.  (SUF at ¶ 23.)

On December 19, 2017, Nurse Garcia issued a disciplinary infraction

to Mr. Van Uden for insolence and threatening behavior stating:

> On the above date an[d] time, Inmate Vanuden, H # 3015519 was
> asked not to hang on security gate. #4208:  Inmate threw up his arms,
> yelling "Where is that written" inmate was very ag[i]tated pacing,
> throwing his arms about.  #4235 this CHST was glad there was
> security gate between inmate and myself, felt extremely threatened by
> this inmates behavior. End of report.

(SUF at ¶ 24.)

For both major and minor infractions, inmates are entitled to a hearing

and opportunity to present evidence in their defense.  Major infractions can be

appealed.  (SUF at ¶ 25.)  Threatening staff is a major infraction.  (SUF at ¶ 26.)

The disciplinary infraction report completed by staff includes a Notice

of Hearing/Prehearing Action.  Inmates are asked to acknowledge service by

signing the Notice of Hearing/Prehearing Action.  If an inmate refuses to sign the

Notice, it is considered a waiver of the hearing, the right to present witnesses and

statements, and the right to an appeal.  (SUF at ¶ 27.)  The disciplinary infraction

report and Notice of Hearing/Prehearing Action form warns inmates, in boldface

type, "I also understand that by refusing to sign I am waiving my hearing, my right

to witnesses and witness statements, and my right to an appeal."  (SUF at ¶ 28.)

Mr. Van Uden refused to sign the December 19, 2017 disciplinary infraction

form, waiving his right to a hearing.  (SUF at ¶ 29.)  On December 22, 2017, a

disciplinary hearing was held.  Mr. Van Uden was not present.  (SUF at ¶ 30.)  At

the hearing, Mr. Van Uden was found not guilty of threatening staff, but guilty of

insolence.  (SUF at ¶ 31.)

Jim Salmonsen is Associate Warden of Operations at MSP.  (SUF at ¶ 32.)

His duties as Associate Warden of Operations include responsibility for

supervising food services, maintenance, warehouse operations, training, and the

prison hobby program.  (SUF at ¶ 33.)  From January 23, 2018, to October 22,

2018, Salmonsen was interim Warden at MSP.  His duties during that time

included overall responsibility for prison operations, including inmate and staff

security.  (SUF at ¶ 34.)  In neither role did Salmonsen have any supervisory

authority over the provision of healthcare services by medical professionals at

MSP, including Dr. Rees.  Salmonsen could neither intervene in medical treatment

decisions nor direct any particular course of treatment.  (SUF at ¶ 36.)  Rather,

with respect to questions regarding the provision of inmate medical services, MSP

healthcare staff are supervised exclusively by the DOC Medical Services Bureau

and Clinical Services Division.  (SUF at ¶ 35.)

DOC operates a Medical Review Panel (MRP) which reviews issues

referred to it regarding medical care of inmates.  Salmonsen does not attend or

participate in MRP meetings or decisions.  (SUF at ¶ 37.)  Inmate medical records are maintained separately from an inmate's other records.  At MSP, medical records are kept in the infirmary.  (SUF at ¶ 38.)  Non-healthcare staff at MSP do not have general access to inmate medical records.  Inmate health information is shared only on a need-to-know basis. (SUF at ¶ 39.)  Inmate health records are only be accessed or released to nonhealthcare staff, including the prison administration, in accordance with DOC Policy 4.5.38.  (SUF at ¶ 40.)

Salmonsen does not generally have access to inmate medical records.  (SUF at ¶ 41.)  As either Warden or Associate Warden, Salmonsen does not receive or have any role in addressing grievances or grievance appeals filed by inmates regarding health services decisions. Those grievances are handled by the DOC Clinical Services Division.  (SUF at ¶ 43.)  Except for information learned in the course of defending this lawsuit, Salmonsen has no personal knowledge of Mr. Van Uden's medical conditions or the medical care provided to Mr. Van Uden while at MSP.  (SUF at ¶ 44.)  Salmonsen neither received nor addressed any appeals by Mr. Van Uden regarding his health services grievances. (SUF at ¶ 45.)

## III.   ANALYSIS

### A.  Nurse Garcia

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement

states:

> [n]o action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002);

*Booth v. Churner*, 532 U.S. 731, 741 (2001).  This means a prisoner must

"complete the administrative review process in accordance with the applicable

procedural rules, including deadlines, as a precondition to bringing suit in federal

court."  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  Exhaustion is mandatory.

*Booth,* 532 U.S. at 741; *Jones v. Bock*, 549 U.S. 199, 211 (2007).  Under the

PLRA, prison regulations define the exhaustion requirements.  *Jones*, 549 U.S. at

218.

The defendant bears the ultimate burden of proving failure to exhaust.  *See*

*Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005).  If the defendant initially

shows that (1) an available administrative remedy existed and (2) the prisoner

failed to exhaust that remedy, then the burden of production shifts to the plaintiff

to bring forth evidence "showing that there is something in his particular case that

made the existing and generally available administrative remedies effectively

unavailable to him."  *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).  Once

the defendant has carried that burden, the prisoner must produce evidence

demonstrating that "the local remedies were ineffective, unobtainable, unduly

prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182,

1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the

accomplishment of a purpose,' and that which 'is accessible or may be obtained.'"

*Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (citing *Booth*, 532 U.S., at 737–738.)

Therefore, inmates must exhaust those "grievance procedures that are 'capable of

use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting

*Booth*, 532 U.S., at 738, 121 S.Ct. 1819.)

There are three general situations that can render a prison or jail grievance

process unavailable to an inmate.  First, an administrative procedure is not

available, and therefore need not be exhausted, "when (despite what regulations or

guidance materials may promise) it operates as a simple dead end—with officers

unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*,

136 S.Ct. at 1859.

Second, "an administrative scheme might be so opaque that it becomes,

practically speaking, incapable of use.  In this situation, some mechanism exists to

provide relief, but no ordinary prisoner can discern or navigate it." *Id.*  "When

rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted). However, the procedures need not be sufficiently "plain" as to preclude any reasonable mistake or debate with respect to their meaning. *Id.* Therefore, when an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion. *Id.*

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id.* at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

13

Mr. Van Uden made the following allegations against Nurse Garcia in his Amended Complaint, "She acted negligently by thearts [sic] of write up's and lock up's by dening [sic] to plaintiff access to Dr. Rees and lieing [sic] to plaintiff on multible [sic] times.  I plaintiff have only seen Dr. Rees once in a year."  (Doc. 8-1 at 3.)  Defendants submit that Mr. Van Uden did not file a grievance specifically alleging that Nurse Garcia was denying him access to Dr. Rees.  They contend that Mr. Van Uden's only grievance which plausibly embraces his claims against Nurse Garcia is his December 24, 2017 informal resolution form.  (SUF at ¶ 21; Doc. 26-5 at 31.)  This informal was denied by a unit manager on December 27, 2017 stating, "Disciplinary is non-grievable there is an appeal for this."  (SUF at ¶ 22; Doc. 26-5 at 31.)  Mr. Van Uden did not file a formal grievance on this issue and thus did not complete the grievance process. (SUF at ¶ 23.)

It appears Mr. Van Uden did not complete the grievance process on this issue because he was informed it was a non-grievable disciplinary issue.  But as Defendants argue, Mr. Van Uden had a separate administrative remedy for disciplinary actions.  Disciplinary hearings can be an available administrative remedy if they can afford some relief on the particular issue about which the inmate complains. *Fuqua v. Ryan*, 890 F.3d 838, 847 (9th Cir. 2018).  Nurse Garcia wrote Mr. Van Uden up for insolence and threats on December 19, 2017.

14

(Doc. 26-8.)  A hearing on this report was set for December 22, 2017 and Mr. Van Uden was given notice of the hearing but he refused to sign the disciplinary report thus waiving his right to a hearing, his right to call witnesses, and his right to appeal.  (Doc. 26-8.)  Mr. Van Uden does not dispute his failure to exhaust his disciplinary process.  He simply argues that he could not grieve the issue because it was disciplinary.  (Doc. 40 at 3.)  By its terms, the PLRA requires the exhaustion of "available" administrative remedies.  42 U.S.C. § 1997e(a).  The Court finds that an appeal of his disciplinary write-up was an available administrative remedy that Mr. Van Uden should have exhausted prior to filing this lawsuit.

Accordingly, Nurse Garcia's Motion for Summary Judgment should be granted based upon Mr. Van Uden's failure to exhaust administrative remedies.

## B.  Defendant Salmonsen

In his Amended Complaint, Mr. Van Uden alleged that AW Salmonsen had the responsibility to train, supervise, and discipline his staff because he oversees the running of the Prison and is responsible for training staff including Dr. Rees. (Amended Complaint, Doc. 8-1 at 3.)  Defendant Salmonsen argues he is entitled to summary judgment because he had no authority over medical decisions at MSP.

Section 1983 imposes individual liability upon state actors only when their personal conduct violates a plaintiff's constitutional rights.  *Monell v. Dep't of*

*Soc. Servs.*, 436 U.S. 658, 691-94 (1978).  This can be established in two ways.

First, an individual can be held liable for his or her own personal acts that directly

cause an injury.  Second, an individual can be held liable in his individual capacity

under a theory of supervisory liability.  "A defendant may be held liable as a

supervisor under § 1983 if there exists either (1) his or her personal involvement

in the constitutional deprivation, or (2) a sufficient causal connection between the

supervisor's wrongful conduct and the constitutional violation."  *Starr v. Baca*,

652 F.3d 1202, 1207 (9th Cir. 2011).  To impose liability under Section 1983

against a supervisor, a plaintiff must establish the supervisor's <u>prior</u> knowledge of

unconstitutional conduct committed by subordinates that would give the

supervisor notice of the need for changes.  *Howell v. Earl*, 2014 WL 2594235 (D.

Mont. 2014) (*citing Starr*, 652 F.3d at 1208; *Dougherty v. City of Covina*, 654

F.3d 892, 900–01 (9th Cir. 2011)); *see also Larez v. City of Los Angeles*, 946 F.2d

630, 646 (9th Cir. 1991), *Watkins v. City of Oakland*, 145 F.3d 1087, 1093–94 (9th

Cir. 1997), and *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007).

   Section 1983 will not impose liability on supervising officers under a

respondeat superior theory of liability.  *Monell*, 436 U.S. at 691-94.  That is, a

defendant cannot be held liable just because they supervise other employees.

Instead, supervising officers can be held liable under Section 1983 "only if they

16

play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987). A supervisor may be liable: (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a reckless or callous indifference to the rights of others. *Larez*, 946 F.2d at 646.

Allegations against supervisors that resemble "bald" and "conclusory" allegations will be dismissed. *Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012). Mr. Van Uden failed to present "sufficient facts to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates." *Hydrick*, 669 F.3d at 942 (*citing Starr*, 652 F.3d at 1206–07).

Mr. Van Uden argues AW Salmonsen is liable because he was "responsible for the health and safety of every inmate in custody at Montana State Prison, as well as the staff at Montana State Prison." (Response to Salmonsen Aff., Doc. 41-2 at 2.) This is insufficient. Mr. Van Uden argues that he filed a "Warden Appeal" of his medical grievances. (Doc. 41-2 at 5.) But Defendants presented undisputed evidence establishing that the healthcare staff at MSP are supervised

17

exclusively by the Medical Services Bureau and the Clinical Services Division. (Winner Aff., Doc. 26-12 at 2.)

Mr. Van Uden presented no evidence to establish that Salmonsen knew or should have known of Mr. Van Uden's medical issues or that he acquiesced in the alleged mistreatment of Mr. Van Uden.  Although Mr. Van Uden alleges Salmonsen failed to train, supervise, and/or discipline Dr. Rees he provides absolutely no evidence to establish that Salmonsen was responsible for training, supervising or disciplining medical staff.  In contrast, Defendants presented undisputed testimony that the provision of health services to inmates is supervised by the MDOC Clinical Services Division and Salmonsen did not have any authority to supervise or direct the provision of inmate health services.  In addition, Salmonsen presented undisputed testimony that prior to this lawsuit, he had no personal knowledge of Mr. Van Uden's medical conditions or the nature of the medical care provided to him at MSP.  (Salmonsen Aff, Doc. 26-11 at 3.)

Defendant Salmonsen's Motion for Summary Judgment should be granted.

Based upon the foregoing, the Court issues the following:

## ORDER

1.  All dispositive pretrial motions with supporting briefs shall be filed and served on or before **August 2, 2019**.  Briefing shall be in accordance with Rule 7

18

of the Local Rules of the United States District Court for the District of Montana.

Rule 7 provides that responses to motions to dismiss, for judgment on the

pleadings, or for summary judgment must be filed within 21 days after the motion

was filed, and responses to all other motions must be filed within 14 days after the

motion was filed.  L.R. 7.1(d)(1).  With the service copy of each motion,

Defendants must provide Mr. Van Uden with a copy of the Court's Notice of

Electronic Filing so Mr. Van Uden is aware of the actual filing date for each

motion.  Mr. Van Uden will be allowed an additional three days for mailing to be

counted after the time period expires to file his response.

    2.  If no dispositive motions are filed on or before the motion deadline,

defense counsel must assume responsibility for convening a conference of all

parties for the purpose of preparing a Proposed Final Pretrial Order.  Counsel shall

ensure that all tasks are accomplished as set forth in the Attachment to the Court's

October 15, 2018 Scheduling Order (Doc. 12) on or before **August 30, 2019**.  A

Final Pretrial Conference and trial date will be set by further Order of the Court.

    Further, the Court issues the following:

## RECOMMENDATIONS

Defendants' Motion for Summary Judgment (Doc. 24) should be

GRANTED.  Defendants Garcia and Salmonsen should be dismissed from this

action.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[2]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 24th day of June, 2019.


　　　　　　　　　　　　 _/s/ John Johnston_____
　　　　　　　　　　　　 John Johnston
　　　　　　　　　　　　 United States Magistrate Judge

---

[2]Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since Mr. Van Uden is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.